# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GARY STEWARD DUNNING,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:11-CV-1487-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **COMMISSIONER OF SOCIAL** } | |
| **SECURITY,** } | |
| } | |
| **Defendant.** } | |

## **MEMORANDUM OF DECISION**

Plaintiff Gary Steward Dunning brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Act, and Supplemental Security Income ("SSI") benefits under Title XVI of the Act. Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be reversed and remanded. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

**I.     Proceedings Below**

*A.     Procedural History*

Plaintiff filed applications for a period of disability, DIB, and SSI on April 8, 2007. (Tr. 76, 118). He alleged that his disability began on November 19, 2006. (*Id*.). Plaintiff's applications were initially denied and he then requested a hearing. (Tr. 41-53). His request was granted, and on July 23, 2009, Plaintiff received a hearing before Administrative Law Judge ("ALJ") Jerry M. Lang.

(Tr. 19, 56). In his decision dated October 22, 2009, the ALJ determined that Plaintiff had not been under a disability, as defined in the Act, at any time from November 19, 2006 through the date of the decision. (Tr. 18). After the Appeals Council denied Plaintiff's request for review of ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (Tr. 1).

    B.    *Facts*

Prior to his alleged onset of disability, Plaintiff had held various jobs between 1992 and 2006 as a material handler and general laborer, specifically as a cleaner for a steel plant, a hangman for an electrical company, a planter for a flower nursery, and a dumper for a meat company. (Tr. 90). Plaintiff last met the insured status requirements of the Act on December 31, 2008. (*See* Tr. 38).[1] He was thirty-eight years old as of the date last insured. (*See id.*).

On November 19, 2006, Plaintiff presented to University of Alabama-Birmingham ("UAB") Emergency Room with seven gunshot wounds and injuries to the forehead, left femur, left hand, and proximal right humerus (Tr. 131-32, 137, 140). He then underwent a craniotomy for a depressed skull fracture and an IM nail of his left femur. (Tr. 132). He was extubated on November 21, 2006, after undergoing humerus repair, and placed on antibiotics. (Tr. 132, 129). Plaintiff was discharged on December 12, 2006. (Tr. 129). X-rays taken in January and February 2007 showed that

---

[1] Plaintiff's Insured Status Report lists his date last insured ("DLI") as December 31, 2009. (Tr. 74). This constitutes a discrepancy between the Insured Status Report and the Social Security Administration's ("SSA") Disability Determination and Transmittal ("DDT"). The ALJ used the DDT's DLI in his opinion, and the court notes the discrepancy. It also notes, however, that since the ALJ determined that Plaintiff was not disabled through the date of his decision rather than through the date last insured, the discrepancy is immaterial.

Plaintiff's left hand, right shoulder, and left femur were progressively healing. (Tr. 126-28). He now claims that nerve damage to his right arm and his head limits his ability to work. (Tr. 23, 81).

In June 2007, Plaintiff participated in physical therapy for bilateral wrist drop, during which he had difficulty making a fist with his left hand, but stated that his grip in his left hand was getting better. (Tr. 168-70). X-rays from October 2007 revealed "diffusely spread tiny bone cysts" in the right hand, deformity of the distal third left metatarsal, and mild deformity of the proximal phalanx of the left index finger. (Tr. 167). Plaintiff also sought treatment for pain in his right hand and wrist in June 2008. (Tr. 166). Testing showed demineralization of the osseous structures but no ulnar injury and an intact ulnar styloid process with no localized soft tissue swelling. (*Id.*). Treatment in June 2008 consisted of physical and occupational therapy and the records show this helped Plaintiff. (Tr. 174). A hospital visit in May 2009 revealed that Plaintiff's ulnar neuropathy had improved, but he claimed to be in pain despite taking prescribed medication. (Tr. 178).

At the administrative hearing, Plaintiff described his symptoms. He testified that the main symptoms he continued to suffer as a result of his gunshot wounds include a feeling of "needles in the same spot in [his right] arm;" loss of strength in his wrist; leg swelling that occurs two to three mornings per month; and the inability to make a fist with his left hand. (Tr. 23-24, 33). He also testified that he experiences pain in his upper arm when it is subjected to constant movement. (Tr. 26-27).

Plaintiff is right-handed and testified that the pain caused by working with his right hand would prevent him from performing even light work on a full-time basis. (Tr. 32-33). He testified that, after using his right hand for thirty minutes to an hour, the pain would increase, and that it takes four to five hours for the pain to recede to pre-working levels. (Tr. 36).

Following Plaintiff's testimony, a vocational expert ("VE") testified that, given Plaintiff's age, education, past work experience and assuming Plaintiff could perform light work with only occasional manipulation, he could find employment in Alabama as an information clerk or an ironer. (Tr. 34-35). The VE then testified that if Plaintiff were to be taken at his word – that is, if he could do no more than thirty minutes of fine manipulation with his right hand during the day – Plaintiff would not be employable. (Tr. 36-37).

  C. *ALJ Decision*

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a)(4). The ALJ first determines whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is performing SGA, he is not disabled under the Act. *Id.* The ALJ found that Plaintiff had not engaged in SGA between his alleged onset date of disability and his DLI. (Tr. 14).

In step two, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. If the claimant does not have a severe impairment or combination of impairments, he is not disabled. The ALJ found that Plaintiff's status/post femoral fracture with rod insertion and status/post gunshot wounds with metacarpal fractures constituted "severe" impairments. (Tr. 14).

In step three, the ALJ must determine whether the claimant's impairments "meet[] or equal[]" the criteria of an impairment listed in Appendix 1, Subpart P of Part 404 of the Code of

4

Federal Regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments meet these criteria, the claimant is automatically determined to be disabled. The ALJ found that Plaintiff's impairments did not meet the criteria, but did not elaborate on his reasoning.[2]

Having found that Plaintiff failed to meet the criteria for disability under step three, the ALJ was compelled to move to step four of the disability analysis. Before step four may be administered, the ALJ must first determine the claimant's residual functional capacity ("RFC"). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. § 404.1545. In so doing, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. § 404.1520(e). The ALJ determined that Plaintiff had the RFC to lift or carry twenty pounds occasionally, to lift or carry ten pounds frequently, to stand or walk for six hours, sit for six hours, and occasionally perform fine manipulations. (Tr. 15).

In considering Plaintiff's symptoms, the ALJ followed a two-step process. *See* 20 C.F.R.§ 404.1529. First, the ALJ determined whether there was an underlying medically determinable impairment that could reasonably be expected to produce Plaintiff's symptoms. (Tr. 15) After determining that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the ALJ evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms to determine the extent to which they limited his ability to do basic work activities. (Tr. 15-16). The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects

---

[2]The ALJ did not explain why Plaintiff's severe impairments did not meet the criteria of a listing, and Plaintiff does not raise this issue on his appeal to this court. (*See* Doc. 9). "While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination." *Hutchison v. Bowen*, 787, F.2d 1461, 1463 (11th Cir. 1986).

of his symptoms were not credible to the extent that they were inconsistent with his RFC assessment. (Tr. 15).

The ALJ based his decision to discredit Plaintiff on the following facts: Plaintiff's ulnar neuropathy and grip had improved; he was taking over-the-counter medications for his pain; and he sought medical care too infrequently to support his allegations of intense and persistent pain. (Tr. 16).

Having established an RFC, the ALJ proceeded to the fourth step of the analysis. In step four, the ALJ considers whether the claimant, given his RFC, can perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). The ALJ determined that Plaintiff's past relevant work as a material handler and general laborer, which are classified as medium and heavy work, require greater functional abilities than Plaintiff possessed. (Tr. 17). Therefore, according to the ALJ, Plaintiff was not capable of performing his past relevant work at the time of the hearing. (*Id.*)

The fifth and final step of the analysis requires the ALJ to determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience.[3] If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work, he is found to be disabled. 20 C.F.R. § 404.1520(a)(4)(v). Having found that Plaintiff was not capable of performing the full range of light work because of additional limitations, the ALJ asked the VE whether jobs existed in the national economy for an individual of Plaintiff's age, education, work

---

[3]These factors are usually considered in conjunction with the Medical-Vocational Guidelines ("MVGs"), 20 C.F.R. Part 4, Subpart P, Appendix 2. In the instant case, the ALJ's finding that Plaintiff was capable of performing all or substantially all of the requirements of "light work," as defined by the MVGs precluded him from making a finding of "not disabled" based on the MVGs. *See id.* (*See* Tr. 17).

experience, and RFC. (Tr. 17-18). Based on the VE's assessment of Plaintiff's capabilities – specifically, that Plaintiff could find employment as an information clerk or an ironer – the ALJ determined that Plaintiff was capable of making a successful adjustment to other work existing in significant numbers in the national economy. (Tr. 18).

Having found that Plaintiff was capable of making a successful transition to other work, the ALJ determined that Plaintiff was not under a disability as defined by the Act at any time between November 19, 2006, and the date of his decision. (Tr. 18).

## II.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or, in the alternative, remanded for further consideration. (Doc. #9 at 10). Plaintiff argues that the ALJ's finding that he is not disabled is not supported by substantial evidence, and that the ALJ did not apply the correct legal standards. (*Id.* at 3). Specifically, Plaintiff contends that the ALJ erred by: (1) not obtaining an RFC through a consultative examination; (2) not considering his impairments within the Eleventh Circuit pain standard; and (3) not properly considering his limitations in both hands, particularly his dominant right hand, withing the framework of Social Security Ruling ("SSR") 96-7p. (*Id*. at 7-9).

## III.    Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. §§ 405(g), 1631(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1529 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual

findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

**IV.   Discussion**

    **A.   There is No Reversible Error Based Upon the ALJ Not Ordering a Consultative Exam.**

Plaintiff claims that the ALJ did not fully develop the record because he failed to order a consultative examination. (Doc. #9 at 8). Plaintiff asserts this constitutes a reversible error. (*Id.*). Defendant counters that Plaintiff abandons this argument by not identifying any specific deficiency in the evidence that undermines the ALJ's decision, and that, even if the argument was not abandoned, the ALJ is not required to order a consultative examination if it is not needed to make an informed decision. (Doc. #10 at 16).

The ALJ generally has an obligation to develop the record, but is not required to order a consultative examination as long as the record contains sufficient evidence to make an informed decision. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Plaintiff directs this court's attention to two of this circuit's cases, *Reeves v. Heckler*[4] and *Holladay v. Bowen*[5] that, in dicta, address the ALJ's duty to order a consultative exam when the exam is necessary to make an informed decision. What these cases have in common is that neither was remanded on the

---

[4] 734 F.2d 519, 522 n.1 (11th Cir. 1984).

[5] 848 F.2d 1206, 1209 (11th Cir. 1988).

8

basis of failure to obtain an exam[6] and, in both cases, the claimant had requested that an exam be conducted. Conversely, in the instant case, this court sees nothing in the record or the parties' briefs that suggests Plaintiff requested an exam and was refused.

Plaintiff contends that a consultative exam would have proven beneficial for the ALJ as he formed his determination. However, the question the court must address (when reviewing an ALJ's ruling for substantial evidence) is not whether an exam would be beneficial, but rather if it was *necessary* for an ALJ to make an informed decision. Here, the ALJ had at his disposal several years' worth of Plaintiff's medical records that addressed each of his claimed ailments, and analyzed Plaintiff's testimony. This court cannot say that a consultative exam was necessary to an informed decision here.

> B.     **The ALJ Correctly Applied the Eleventh Circuit Pain Standard.**

Plaintiff submits that the ALJ failed to consider his impairments within the framework of the Eleventh Circuit pain standard, and that this failure constitutes a reversible error. In the Eleventh Circuit, the standard for subjective complaints of pain or other symptoms requires a showing of the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

---

[6] In *Reeves*, the Eleventh Circuit remanded an ALJ decision because the ALJ had considered the claimant's ailments only separately, and not in combination. *See Reeves*, 734 F.2d at 525. In *Holladay,* the Eleventh Circuit affirmed the ALJ's determination despite the ALJ's refusal to honor claimant's request for an arteriogram. *See Holladay*, 848 F.2d at 1210.

While it is true that the ALJ did not refer to the language of the pain standard set forth in *Holt*, the ALJ applied (and cited) the two-step process prescribed by 20 C.F.R. § 404.1529, on which the three-part pain standard is based. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). Eleventh Circuit precedent confirms that this is an acceptable way to apply the pain standard. *See id. See also Hennes v. Comm'r of Sec. Sec. Admin.*, 130 Fed. Appx. 343, 347 n.7 (11th Cir. 2005) (holding that while the ALJ did not cite to *Holt*, she cited to 20 C.F.R. § 404.1529, "which contains the same language on subjective pain testimony"); *Wallace v. Barnhart*, 256 F.Supp.2d 1360, 1377 n.9 (S.D. Fla. 2003) (finding that the ALJ properly applied the Eleventh Circuit's pain standard even though the ALJ did not directly cite or refer to the language of the three-part pain standard as he cited to 20 C.F.R. § 404.1529, "which contains the same language regarding the subjective pain testimony that courts have interpreted when initially establishing the three-part pain standard"). Accordingly, this argument is without merit.

**C.      The ALJ's Decision to Discredit Plaintiff's Testimony Was Not Based Upon Substantial Evidence and Misapplied the Law.**

Finally, Plaintiff submits that the ALJ did not properly consider his testimony regarding his pain within the framework of SSR 96-7. After reviewing the record, the court concludes that the ALJ strayed from the guidelines set forth in SSR 96-7 and discredited Plaintiff's pain testimony without substantial evidence for doing so.

The reasons given for discrediting pain testimony must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Eleventh Circuit precedent requires "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005) (citing *Canon v. Bowen*,

858 F.2d 1541, 1545 (11th Cir. 1988)).  Furthermore, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *4 (Jul. 2, 1996).

The ALJ gave specific reasons for discrediting Plaintiff's testimony: medical records show that Plaintiff's left hand grip and right ulnar neuropathy had improved; he treated his pain with over-the-counter medication; and the frequency of his hospital visits were not, according to the ALJ, consistent with the level of pain he alleged.  (Tr. 16).  The court looks now to each of the ALJ's articulated reasons to determine if any of them, or all of them together, provided the ALJ substantial evidence for discrediting Plaintiff's testimony.

The ALJ correctly noted the improvement in Plaintiff's symptoms.  Medical records from June 2007 show that Plaintiff's left hand grip was "getting much better" and records from May 2009 show an improvement in his ulnar neuropathy. (Tr. 168, 178).  Plaintiff's testimony, however, is consistent with his medical records, because Plaintiff did not deny that improvement occurred. Plaintiff testified:

> [W]hen I first got shot, it was like almost a year and a half before I could even do anything with [my right arm] because my wrist flopping [down] . . . . [I]t was like a year and a half before I even got the strength back in it to lift it to move back and forth . . . . "[A]fter a couple of months, I . . . got use back in . . . my left hand where I could bathe myself.

(Tr. 28-29).  "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  SSR 96-7p at *5.

Plaintiff's testimony is not at odds with his medical records. While a showing of improvement is an important factor to consider, it is certainly possible for one to be disabled despite enjoying some improvement.

Defendant argues that Plaintiff's admission that he could bathe and groom himself with his left hand supports the ALJ's determination that Plaintiff can perform occasional fine manipulation. (Doc. #10 at 13). (*See* Tr. 29). And that argument would have more merit if only Plaintiff's left hand were at issue here. But, as it stands, Defendant's argument does not account for the VE's testimony that, if Plaintiff's testimony regarding only the pain in his *right* hand be taken at face value, Plaintiff would not be employable. (*See* Tr. 36-37).

The ALJ, while assessing Plaintiff's credibility, noted that Plaintiff treated his pain with over-the-counter medications. (Tr. 16). It is not clear from the language of the ALJ's ruling whether Plaintiff's treatment of pain through over-the-counter medication played a role in his assessment of Plaintiff's credibility. Although the court concludes that, whether it did or not is ultimately immaterial to the outcome of the instant appeal, for a complete analysis of the record, the court explains why, in this case, Plaintiff's use of over-the-counter medication does not constitute substantial evidence for discrediting his testimony.

The type of medication used to treat a medical condition or impairment is certainly relevant when determining the credibility of a claimant's pain testimony. *See* 20 C.F.R. § 404.1529(c)(3)(iv). *See also Jarrell v. Comm'r of Soc. Sec.*, 433 Fed. Appx. 812, 814 (11th Cir. 2011) (finding a lack of prescription pain medication to weigh against a disability claimant's credibility). To be sure, the record does show that Plaintiff used over-the-counter medication to treat his alleged disability; however, the record also shows that over-the-counter medication is mostly ineffective for Plaintiff.

During his hearing, Plaintiff testified that he used Aleve to treat pain in his right hand when it grew worse from performing tasks like fixing a sandwich or washing dishes. (Tr. 27-28). He also used the prescription medication Elavil. (Tr. 28). He described the medicine as mostly ineffective: "[I]t really don't . . . do nothing, but it . . . helps just a little bit." (*Id. See also* Tr. 32 (testifying that neither of the prescription medications Neurontin nor Elavil relieve the pain in his arm)). Plaintiff's testimony is consistent with the record. Physician's progress notes from September 2008 confirm that Aleve is "not helping much." (Tr. 179). Moreover, notes from May 2009 show that even the prescription medicine Neurontin was not effective in treating Plaintiff's chronic pain. (Tr. 178). In his hearing testimony, Plaintiff did seem to imply that Aleve effectively treated the pain in his leg that occurred two to three times a month (Tr. 24, 33), but both the record and Plaintiff's testimony point to neither prescription nor over-the-counter medications being effective in easing the pain in his right hand. The mere fact that Plaintiff takes over-the-counter medications from time to time does not constitute such substantial evidence, especially when, as here, Plaintiff has other maladies *and* the medication (both over-the-counter and prescribed) is generally ineffective.

Finally, the ALJ discredited Plaintiff's pain testimony because, according to the ALJ, "his level of pain alleged is not consistent with his attempts to receive medical treatment." (Tr. 16). The ALJ noted specifically that Plaintiff did not seek medical treatment between September 2008 and May 2009. (*Id.*).

A longitudinal medical record demonstrating a claimant's attempts to seek medical treatment supports their credibility, and, conversely, their statements may be less credible if the frequency of treatment is inconsistent with their level of complaints. SSR 96-7p at *7. The ALJ was correct to take into account long gaps in Plaintiff's treatment history. But the ALJ erred and misapplied SSR

96-7 by placing weight on Plaintiff's medical treatment history without providing Plaintiff a chance to offer an explanation. SSR 96-7 states:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits . . . . The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

*Id.* SSR 96-7 places a responsibility on an ALJ who invokes medical treatment history as a reason to discredit a claimant. Before using gaps in treatment to discredit a claimant, the ALJ should provide the claimant a chance to explain them. The ALJ did not do that here. He noted only that Plaintiff did not provide him with evidence of being refused medical treatment due to an inability to pay, and then concluded that someone with the degree of pain alleged by Plaintiff would attempt to receive more frequent care. (Tr. 16). But, inability to pay is only one possible explanation for not seeking treatment. There are several plausible reasons why someone in disabling pain may forego treatment for a period of time, and SSR 96-7 itself lists five such examples (other than being unable to pay). *See* SSR 96-7p at *8.[7] Furthermore, the ALJ did not attempt to elicit an explanation from

---

[7]The pertinent provision reads as follows:

The explanations provided by the claimant may provide insight into the claimant's credibility.

- The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.

14

Plaintiff at the administrative hearing. (*See* Tr. 21-37). In fact, the ALJ never even broached the subject. (*See id.*). None of the reasons articulated by the ALJ for discrediting Plaintiff's pain testimony are based upon substantial evidence.

**V.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff was not disabled during the period insured is not supported by substantial evidence. The Commissioner's final decision is due to be reversed and remanded, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ____11th____ day of September, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

- The individual's symptoms may not be severe enough to prompt the individual to seek ongoing medical attention or may be relieved with over-the-counter medications.
- The individual may not take prescription medication because the side effects are less tolerable than the symptoms.
- The individual may be unable to afford treatment and may not have access to free or low-cost medical services.
- The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.
- Medical treatment may be contrary to the teaching and tenets of the individual's religion.